DIME COAL COMPANY, INC.,
Plaintiff-Appellee,

v.

Harrison COMBS, John J. O'Connell, and
Paul R. Dean, as Trustees of the United
Mine Workers of America Health and
Retirement Funds, Defendants-Appellants.

No. 85–7758.

United States Court of Appeals,
Eleventh Circuit.

Aug. 11, 1986.

Patrick K. Nakamura, Birmingham, Ala.,
for defendants-appellants.

William F. Hanrahan, Catherine H. Mitchell, Gerald E. Cole, Jr., United Mine Workers of America Health and Retirement Funds, Washington, D.C., for Harrison Combs.

Susan B. Mitchell, Sirote, Permutt, Friend, Friedman, Held & Apolinsky, Birmingham, Ala., for plaintiff-appellee.

Before HILL, Circuit Judge, HENDERSON *, Senior Circuit Judge, and LYNNE **, Senior District Judge.

HILL, Circuit Judge:

In this case we address the question whether there exists in section 403(c)(2)(A)(ii) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1103(c)(2)(A)(ii) (1982), which authorizes the trustees of a multiemployer employee welfare or pension benefit plan to refund mistaken overpayments by an employer within six months after the discovery by the plan administrator of the mistake, an implied private right of action in favor of employers to recover mistaken contributions that are being wrongfully withheld by the plan's trustees. The district court found such a private right of action to exist. We reverse.

## FACTS

Appellants are trustees of a set of multiemployer employee benefit trust plans that we will refer to collectively as the United Mine Workers of America Health and Retirement Funds ("the Funds").[1] Pursuant to wage agreements appellee Dime Coal Company, Inc. ("Dime Coal") signed with the United Mine Workers of America ("UMWA") in 1978 and 1981, Dime Coal made employer contributions to the Funds based on the tons of coal produced or purchased and on the hours worked that Dime Coal reported to the Funds. The contributions were made for the purpose of providing pension, health and other nonpension benefits for retired miners and their eligible dependents and for certain laid-off miners.

An audit of Dime Coal's books was conducted by the Funds in October 1982, covering the periods December 28, 1978 through March 26, 1981 and June 7, 1981 through June 30, 1982. The audit revealed that Dime owed the Funds $723.61 and $968.97 respectively for hours worked and tons purchased, but had overpaid for tons produced by $79,624.31. The trustees refunded $61,700.04 of the overpayment pursuant to section 403(c)(2)(A)(ii) of ERISA, 29 U.S.C. § 1103(c)(2)(A)(ii) (1982), which authorizes employee benefit plan trustees to return mistaken employer contributions within six months of discovering that they were made by mistake. Because approximately $16,000 of the overpayments represented payments made prior to the enactment date of the statutory provision authorizing the refund of mistaken contributions, however, the trustees took the position that they were not statutorily authorized to return the mistaken overpayments and that for them to do so would violate their statutory obligation to ensure that the assets of the Funds are used "for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1) (1982).

After the trustees declined Dime Coal's request for a refund of the disputed overpayments Dime Coal instituted suit in federal district court, claiming that under the statutory refund provision it was entitled to a refund of the overpayments made and

* See Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Seybourn H. Lynne, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. The Funds include the United Mine Workers of America ("UMWA") 1950 Pension Plan and Trust, the UMWA 1950 Benefit Plan and Trust, the UMWA 1974 Pension Plan and Trust, and the UMWA 1974 Benefit Plan and Trust.

to interest thereon. The district court found that it had jurisdiction over the action pursuant to section 502 of ERISA, 29 U.S.C. § 1132 (1982), and 28 U.S.C. § 1331 (1982) and ordered the trustees to return to Dime Coal the disputed overpayments. Applying state law, the court also ordered the trustees to pay prejudgment interest on the refund at a rate of six percent per annum from the date Dime Coal made its demand by letter for a refund. This appeal followed.

## DISCUSSION

### I

■ The trustees argue as a threshold matter that the district court erred in finding that it had subject matter jurisdiction over this action. We agree with appellants that ERISA's grant of exclusive jurisdiction in the federal district courts over actions brought under Title I of ERISA "by the Secretary [of Labor] or by a participant, beneficiary, or fiduciary," 29 U.S.C. § 1132(e)(1) (1982), clearly does not constitute a congressional grant of federal jurisdiction over an action brought under ERISA by an employer who is not also a participant or fiduciary, nor should such a jurisdictional grant be implied. *See Tuvia Convalescent Center, Inc. v. National Union of Hospital & Health Care Employees,* 717 F.2d 726, 729–30 (2d Cir.1983); *Pressroom Unions-Printers League Income Security Fund v. Continental Assurance Co.,* 700 F.2d 889, 892 (2d Cir.), *cert. denied,* 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983). *Contra, Award Service, Inc. v. Northern California Retail Clerks Unions & Food Employers Joint Pension Fund,* 763 F.2d 1066, 1068 (9th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 850, 88 L.Ed.2d 890 (1986); *Fentron Industries, Inc. v. National Shopmen Pension Fund,* 674 F.2d 1300, 1305 (9th Cir.1982).

■ Just as clearly, however, this case fell within the federal question jurisdiction of the district court. Dime Coal alleged in its complaint that it was entitled to a refund of the mistaken overpayments under a provision of federal law. The test of federal jurisdiction, where such a claim is raised, is not whether the cause of action alleged was one "on which [the complainant] could actually recover." *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). Rather the test is whether "the cause of action alleged is so patently without merit as to justify ... the court's dismissal for want of jurisdiction." *Hagans v. Lavine,* 415 U.S. 528, 542–43, 94 S.Ct. 1372, 1381–82, 39 L.Ed.2d 577 (1974) (quoting *Bell v. Hood,* 327 U.S. at 683, 66 S.Ct. at 776. *See also Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974) (test is whether right claimed is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy"). We have previously stated that "[w]here the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action ... is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Williamson v. Tucker,* 645 F.2d 404, 415 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). *See also Simanonok v. Simanonok,* 787 F.2d 1517, 1519–20 (11th Cir.1986). This is such a case.

### II

■ Turning to the question of whether a federal cause of action in favor of a contributing employer for the return of mistaken contributions to a multiemployer employee benefit plan exists, appellants argue that the applicable federal statutes neither expressly nor by reasonable implication vest in a contributing employer the right to bring suit to require the trustees of a multiemployer plan to return contributions that were mistakenly made. For this reason, the trustees argue, the district court erred in failing to dismiss Dime Coal's complaint for failure to state a claim upon which relief could be granted. We agree.

Section 502(a) of ERISA expressly provides that certain enumerated individuals may bring civil suits to enforce obligations arising under ERISA or under employee benefit plans. *See* 29 U.S.C. § 1132(a) (1982).[2] Participants, beneficiaries, fiduciaries, and the Secretary of Labor are authorized to file a wide variety of civil suits to obtain enforcement or clarification of obligations arising under ERISA or under an employee benefit plan, but section 502(a) does not authorize contributing employers to bring any kind of civil suit at all.

Dime Coal maintains, however, that a federal remedy in favor of an employer to recover contributions mistakenly made to a multiemployer plan should be implied in the ERISA provision that authorizes trustees to return employer contributions that are discovered to have been made by mistake. The refund provision at issue in this case modifies section 403(c)(1) of ERISA, which provides that the assets of employee benefit plans be held in trust, and that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1) (1982). Section 403(c)(2)(A)(ii) sets forth a narrowly drawn exception to the mandate of section 403(c)(1):

> In the case of a contribution ... (ii) made by an employer to a multiemployer plan by mistake of fact or law ..., paragraph (1) shall not prohibit the return of such contribution or payment to the employer within six months after the plan administrator determines that the contribution was made by such a mistake.

29 U.S.C. § 1103(c)(2)(A)(ii) (1982).[3] Dime Coal invites us to imply in this provision a civil right of action in a contributing employer to require the trustees of a plan to return overpayments whose refund is authorized by the statute.

Applying the four factor test of *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975),[4] the Ninth Circuit has determined

---

**2.** Section 502(a), as codified, provides as follows:

> A civil action may be brought—
> (1) by a participant or beneficiary—
> (A) for the relief provided for in subsection (c) of this section, or
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the plan;
> (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;
> (4) by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of 1025(c) of this title;
> (5) except as otherwise provided in subsection (b) of this section, by the Secretary (A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter; or
> (6) by the Secretary to collect any civil penalty under subsection (i) of this section.

29 U.S.C. § 1132(a) (1982).

**3.** As originally enacted, section 403(c)(2)(A) provided as follows:

> In the case of a contribution which is made by an employer by mistake of fact, paragraph (1) shall not prohibit the return of such contribution to the employer within one year after the payment of the contribution.

29 U.S.C. § 1103(c)(2)(A) (1976). The 1980 amendment to this section was apparently made in response to concerns expressed by multiemployer plan fiduciaries who were prevented from returning mistaken contributions simply because they did not discover that a mistake had been made until more than a year after the mistaken payments were made. *See, e.g., Hearings on the Multiemployer Pension Plan Amendments Act of 1979, H.R. 3904, Before the Committee on Education and Labor,* 96th Cong., 1st Sess., U.S. Code Cong. & Admin. News 1980, p. 2918, June 5 & 7, 1979, at 853–54 (testimony of counsel for Western Conference of Teamsters Pension Trust Fund).

**4.** The four factor test was set forth in *Cort v. Ash* as follows:

> First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," *Texas & Pacific R. Co. v. Rigsby,* 241 U.S. 33, 39 [36 S.Ct. 482, 484, 60 L.Ed. 874] (1916) (emphasis supplied)—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative

that such a cause of action should be implied. The court applied the *Cort v. Ash* test as follows:

> First, the 1980 amendment to section 403(c)(2)(A), which added subparagraph (ii) concerning payments made by an employer by mistake of fact or law, was clearly designed for the benefit of employers ... Second, a congressional intent to create a private remedy in favor of the employer is implicit in section 403(c)(2)(A)(ii). Without such a remedy, the decision to return contributions mistakenly paid would be left solely to the interested trustee. Third, implying a private right of action furthers the congressional scheme of permitting restitution of contributions made by mistake when equitable factors militate in favor of such restitution. Finally, no principle of federal-state comity renders a federal cause of action inappropriate; Congress preempted all state law regarding employee pension benefits effective with contributions made after January 1, 1975.

*Award Service, Inc. v. Northern California Retail Clerks Unions & Food Employers Joint Pension Fund,* 763 F.2d 1066, 1068 (9th Cir.) (citations omitted), *motion to recall mandate denied,* 774 F.2d 1391 (1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 850, 88 L.Ed.2d 890 (1986). *Contra, Teamsters Local 348 Health and Welfare Fund v. Kohn Beverage Co.,* 749 F.2d 315, 321 n. 6 (6th Cir.1984), *cert. denied,* ——

U.S. ——, 105 S.Ct. 2024, 85 L.Ed.2d 305 (1985); *Crown Cork & Seal v. Teamsters Pension Fund,* 549 F.Supp. 307, 309 (E.D. Pa.1982), *aff'd,* 720 F.2d 661 (3d Cir.1983).

■ We do not find the Ninth Circuit's reasoning compelling. "The Supreme Court's most recent decisions make clear that the four [*Cort*] factors are not entitled to equal weight, and that legislative intent is the principal factor in determining the existence of implied rights of action." *Alabama Federal Savings & Loan Ass'n v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 680 F.2d 1384, 1386 (11th Cir. 1982). Regardless of whether we focus on the refund provision as originally enacted or on the 1980 amendment that authorizes the return of the mistaken contributions at issue in this case, we find no indication in the language of the statute or in its legislative history that Congress intended or would approve of the implication of the remedy Dime Coal seeks. Moreover, as the Supreme Court recently observed in declining to imply in ERISA a cause of action for extra-contractual damages to a beneficiary caused by improper or untimely processing of benefit claims, "[t]he six carefully integrated civil enforcement provisions found in § 502(a) ... provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." *Massachusetts Mutual Life Insurance Co. v. Russell,* —— U.S. ——, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985).[5] "The federal judiciary will not

---

intent, either explicit or implicit, either to create such a remedy or to deny one? See, *e.g., National Railroad Passenger Corp. v. National Assn. of Railroad Passengers,* 414 U.S. 453, 458, 460 [94 S.Ct. 690, 693, 694, 38 L.Ed.2d 646] (1974) (*Amtrak*). Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? See, *e.g. Amtrak, supra; Securities Investor Protection Corp. v. Barbour,* 421 U.S. 412, 423 [95 S.Ct. 1733, 1740, 44 L.Ed.2d 263] (1975); *Calhoon v. Harvey,* 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964). And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? See *Wheeldin v. Wheeler,* 373 U.S. 647, 652, 83 S.Ct. 1441, 1445, 10

L.Ed.2d 605 (1963); cf. *J.I. Case Co. v. Borak,* 377 U.S. 426, 434, 84 S.Ct. 1555, 1561, 12 L.Ed.2d 423 (1964); *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 394–395, 91 S.Ct. 1999, 2003–2004, 29 L.Ed.2d 619 (1971); *id.,* at 400, 91 S.Ct. at 2006 (Harlan, J., concurring in judgment).
*Cort v. Ash,* 422 U.S. at 78, 95 S.Ct. at 2088.

5. The 1980 ERISA amendments added additional civil enforcement provisions. In response to concerns that "[r]ecourse under [existing] law for collecting delinquent contributions [was] insufficient and unnecessarily cumbersome and costly," Congress added to ERISA section 515, 29 U.S.C. § 1145 (1982), and amended section 502 to provide "a direct, unambiguous ERISA cause of action to a plan against a delinquent employer." 126 Cong.Rec. 23,288 (1980) (re-

engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide." *California v. Sierra Club,* 451 U.S. 287, 297, 101 S.Ct. 1775, 1781, 68 L.Ed.2d 101 (1981).[6] Thus where, as here, "neither the statute nor the legislative history reveals a congressional intent to create a private right of action ... we need not carry the *Cort v. Ash* inquiry further." *Massachusetts Mutual Life Ins. Co. v. Russell,* 105 S.Ct. at 3093 (quoting *Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 94 n. 31, 101 S.Ct. 1571, 1582 n. 31, 67 L.Ed.2d 750 (1981)). The district court erred in refusing to dismiss Dime Coal's complaint for failure to state a claim upon which relief could be granted.[7]

### III

▉ Although the decision of the district court must be reversed since Congress has not manifested an intent to allow employers to sue to recover unrefunded mistaken

---

marks of Senator Williams); 126 Cong.Rec. 23,039 (1980) (remarks of Cong. Thompson). Moreover, when Congress amended Title I of ERISA without granting employers the express right of action Dime Coal asks us to imply in section 403(c)(2)(A)(ii), it amended Title IV to provide employers a right of action against a plan with respect to claims arising out of the employer's withdrawal from a multiemployer plan. Multiemployer Pension Plan Amendment Act of 1980, Pub.L. 96–364, § 104, 94 Stat. 1208, 1263 (1980) (codified at 29 U.S.C. § 1451(a)(1) (1982)). Thus in 1980, as well, Congress demonstrated its familiarity with the general question of civil enforcement of obligations under ERISA and employee benefit plans, rendering it difficult to take seriously today the suggestion that in 1980 Congress intended but somehow forgot to provide the particular remedy sought in this case.

**6.** We of course express no view concerning whether the federal remedy sought would be a salutary one. It has been suggested, however, that, failing to view section 403(c)(2)(A)(ii) as imposing an enforceable duty on multiemployer plan trustees to refund mistaken contributions will render the refund provision "a nullity" because trustees will "have no incentive to voluntarily return mistakenly paid contributions." *E.M. Trucks, Inc. v. Central States, Southeast and Southwest Areas Pension Fund,* 517 F.Supp. 1122, 1125 (D.Minn.1981). Although our role is not to second-guess the wisdom of Congress in deciding to vest in plan trustees discretion in this area that is unfettered by federal law, we note that Congress has, to a significant degree, guarded against the sort of arbitrary conduct the *E.M. Trucks* court seems to fear. By law, employees and employers must be equally represented on the board of trustees of an employee benefit trust fund. 29 U.S.C. § 186(c)(5)(B) (1982). In this case, appellants state that the board of trustees of which they are members is made up of two representatives appointed by the UMWA, two representatives appointed by the Bituminous Coal Operators' Association and one neutral member agreed upon by the union and the employer association. Any suggestion that the trustees have acted other than in good

faith reliance on their legal position in this matter is further belied by the fact that the trustees voluntarily returned over $60,000 in mistaken contributions to Dime Coal before determining that the contributions at issue in this case did not fall within the ambit of section 403(c)(2)(A)(ii).

**7.** Dime Coal, in its amended complaint, "invoke[d] the equity jurisdiction of [the district court], and aver[red] that it [was] entitled, as a matter of equity, to a refund of the excess contributions or overpayments it made to the [trustees]." The opinion and order of the district court provides no indication whether, in granting summary judgment for Dime Coal, the court intended to rely to any degree on this alternative ground for recovery of the mistaken contributions. Dime Coal has not clearly argued the sufficiency of this basis for sustaining the district court's decision on this appeal, but appellee has cited three decisions that appear to suggest that such a theory of recovery might be viable. *See Teamsters Local 639–Employers Health Trust v. Cassidy Trucking, Inc.,* 646 F.2d 865 (4th Cir. 1981); *Airco Industrial Gases v. Teamsters Health & Welfare Pension Fund of Philadelphia & Vicinity,* 618 F.Supp. 943 (D.Del.1985); *E.M. Trucks, Inc. v. Central States, Southeast and Southern Areas Pension Plan,* 517 F.Supp. 1122 (D.Minn.1981). Although the question is not well presented, since appellee has not seriously pursued this alternative basis for affirmance on its appeal, we hold that no federal common law right to recovery of the disputed contributions at issue in this case exists. As the Supreme Court recently cautioned, "the presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement." *Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 95, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981) (holding no federal common law right to contribution in action by employer against union following class action in which employer was found to have violated Equal Pay Act of 1963 and Title VII of the Civil Rights Act of 1964 by paying collectively bargained wages).

contributions to multiemployer employee benefit plans, we agree with Dime Coal that it is simply inconceivable that Congress could have intended that employee benefit plan trustees be prohibited from refunding mistaken contributions such as those at issue in this case. The legislative language on which the trustees relied in refusing to refund the disputed mistaken contributions is indeed ambiguous, but for a court to fault employee benefit plan trustees for refunding such mistaken contributions would only do clear and unnecessary violence to the intent of Congress in enacting section 403(c)(2)(A)(ii).[8] We are thus confident that the trustees could have refunded the mistaken contributions that are at issue in this case without exposing themselves to the fiduciary liability they fear. But we hold that, as a matter of federal law, a contributing employer may not require multiemployer employee benefit plan trustees to return such contributions if the trustees choose not to do so. Whether such an action might be entertained in the future is a decision that must be left solely in the capable hands of the Congress.

## CONCLUSION

For the foregoing reasons, the decision of the district court is REVERSED, and the case is REMANDED with instructions to dismiss appellee's complaint for failure to state a claim upon which relief may be granted.

---

**8.** Section 403(c)(2)(A)(ii) was enacted on September 26, 1980. The provision permits the return of mistaken payments "within 6 months after the plan administrator determines that the contribution was made by such a mistake." 29 U.S.C. § 1103(c)(2)(A)(ii) (1982). It is appellee's position that this provision applies to all determinations of overpayment that are made after the date of enactment of the amendment, regardless of when the overpayments themselves were made. Appellant claims, however, that the legislation clearly provides that a determination that an overpayment was made before the enactment date of the amendment should be deemed to have been made on the date of enactment, regardless of when it was actually made. Appellant finds support for its position in the following legislative language:

The amendment made by this section shall take effect on January 1, 1975, except that in the case of contributions received by a collectively bargained plan maintained by more than one employer before the date of enactment of this Act, any determination by the plan administrator that any such contribution was made by mistake of fact or law before such date shall be deemed to have been made on such date of enactment.

Pub.L. 96–364, Title IV, § 410(c), Sep. 26, 1980, 94 Stat. 1296, 1308. The conclusion seems inescapable as a matter of common sense that this transitional provision was intended to allow trustees to return any mistaken contributions that were discovered *before* the new refund provision went into effect as long as the contributions were returned within six months of the provision's date of enactment. We can imagine no rational reason consistent with the manifest intent of Congress in enacting the new refund provision to suppose that Congress also intended that mistaken contributions should not be refundable simply because they were made before the enactment date of the new provision *and* were not discovered to have been made by mistake until more than six months after the date of enactment.