OPERATING ENGINEERS LOCAL 312 HEALTH AND WELFARE FUND; and Operating Engineers Local 312 Joint Apprenticeship & Training Fund, Plaintiffs,

v.

RIVERS & ROADS, INCORPORATED, Defendant.

Civ. A. No. 91–G–2491–S.

United States District Court, N.D. Alabama, S.D.

Feb. 5, 1993.

---

Glen Marshall Connor, Cooper, Mitch, Crawford, Kuykendall & Whatley, Patrick K. Nakamura, Longshore, Nakamura & Quinn, Birmingham, AL, Michael A. Crabtree, Central Pension Fund of the IUOE, Washington, DC, for Central Pension Fund.

C.V. Stelzenmuller, Burr & Forman, Birmingham, AL, for defendant.

## MEMORANDUM OPINION

GUIN, District Judge.

This is a suit by Operating Engineers Local 312 Health and Welfare Fund, and Operating Engineers Local 312 Joint Apprenticeship & Training Fund, for an accounting and for monies due them under the provisions of a collective bargaining agreement between Operating Engineers Local 312 and the defendant.

In December 1990, defendant Rivers & Roads, Incorporated [hereinafter Rivers & Roads],[1] entered into a lease with Fru–Con Construction Company [hereinafter Fru–Con] by which it agreed to provide tug services moving barges loaded with cranes, work platforms, men and materials at the Oliver Lock and Dam Construction Project on the Black Warrior River near Tuscaloosa, Alabama. Movement at the construction site took place within one and a half miles of the new lock and dam.

Jeffrey Aldridge, principal pilot, and Larry Chrisman, relief pilot, both of whom are licensed by the United States Coast Guard, were employed by Rivers & Roads as licensed river pilots. Thomas Aldridge, Jr.,[2] William E. Franks, and Donald Head were employed by Rivers & Roads as deck hands securing the tow-boat to barges, as directed by the pilot, or tying up the boat to cavils or cleats on pilings or mooring cells. As deck hands they were not required to be licensed.

Soon after work began, Mr. Tom Aldridge, Sr., began receiving pressure from the marine superintendent to allow a member of the Operating Engineers to operate the tug. When Mr. Aldridge relented, a Fru–Con union pilot piloted the tug for two shifts. The tug was damaged while he was piloting the tug. Mr. Aldridge immediately replaced the union pilot with his own employees.

At the end of December 1990, Mr. Aldridge was contacted by officials of the Operating Engineers Union, Local 312, about paying union dues for his nonunion employees. During the meeting with union officials Mr. Aldridge was told that if he refused to pay union dues another boat

---

1. Rivers & Roads is a Tennessee corporation owned by Tom Aldridge. The corporation has an office located in Guntersville.

2. Thomas and Jeffrey Aldridge are sons of Tom Aldridge, owner of Rivers & Roads.

manned by a union crew would be brought in. Mr. Aldridge maintains he did not agree to pay the union dues, but he did sign a "Heavy and Highway Construction Project Agreement" [hereinafter the Agreement]. From that time on, Fru-Con's project manager wanted to know when Aldridge was going to start paying union dues.

Pertinent portions of the Agreement read as follows:

This Agreement has been entered into this _____ day of _____ between the signatory International Unions comprising the National Joint Heavy and Highway Construction Committee and other signatory International Unions on behalf of their respective local unions, referred to as the "Unions" and on behalf of the signatory companies or signatory divisions, referred to as the "Employer" [sic].

This project Agreement shall apply to **construction employees represented by the Signatory Unions** and employed by the Employer (emphasis added).

### ARTICLE XI

#### Project Rules

1. Employment begins and ends at each project site.

### ARTICLE XII

#### Wage Rates and Fringe Benefits

The classification of employment and minimum wage rates and fringe benefits shall be in accordance with the **project wage addendum attached hereto** and made a part of this Agreement and for the period indicated therein (emphasis added).

**The Employer will be furnished appropriate trust documents by the Unions covering funds into which contributions shall be made.** The Employer will contribute to and be bound by bona fide pension, vacation, health and welfare, apprenticeship and training funds

covering **Union employees** under this Agreement (emphasis added).

### ARTICLE XIII

#### Check-Off

The Employer shall honor Union dues and initiation fees check-off pursuant to receipt of properly authorized dues deduction cards submitted by its employees, along with other lawful authorizations from employees providing for deductions from wages.

### ARTICLE XX

#### Subcontracting

1. In the event the Employer subcontracts out any work covered by this agreement, such subcontractors shall become signatory to this Agreement for such projects.

### ARTICLE XXI

#### Intent of the Parties

1. It is intended that this Agreement shall not violate any applicable Federal or state law, but if any condition is held to violate any law, that portion of the Agreement shall be considered null and void, but the remainder of the Agreement shall continue in full force and effect.

2. The parties agree that the **total results of their understanding are embodied in this Agreement, including addenda, and no party is required to render any performance or recognize any practice not set forth herein** (emphasis added).

3. It is intended that the provisions of local or other national agreements shall not apply to projects performed under this Agreement.

### ARTICLE XXIII

#### Parties to the Agreement

The Parties to this Agreement are the International Unions of the National Joint Heavy and Highway Construction Committee, and other signatory Interna-

tional Unions, and the Signatory Contractors each of whom is the "Employer" party referred to in this Agreement.

.    .    .    .    .

**NOTE: This Agreement may not be applied to any project without the expressed approval of the National Joint Heavy and Highway Construction Committee.**

### HEAVY AND HIGHWAY CONSTRUCTION PROJECT AGREEMENT SIGNATURE SHEET

| EMPLOYER | EMPLOYER |
|---|---|
| Name of Company | Name of Company |
| Signature | Signature |
| UNIONS | UNIONS |

[Signatures of five members of the NJHHCC; presidents of six international unions, including Larry Dugan, Jr., General President, International Union of Operating Engineers; Chairman of NJHHCC; Secretary of NJHHCC; and the General President of United Brotherhood of Carpenters and Joiners of America, omitted.]

Pursuant to the Rivers & Roads/Fru-Con lease, Fru-Con was to pay Rivers & Roads by weekly invoice with net 10 days for payment. Payment was usually late. Rivers & Roads was informed by Fru-Con's accountant that payment would not be forthcoming without payment of union dues. Beginning in March 1991, Rivers & Roads began paying health and welfare assessments and union dues for December 1990, and the first two months of 1991.

When the lease expired in mid-May 1991, Mr. Aldridge made no effort to renew it. Upon completion of work he submitted his last two invoices. Fru-Con refused to remit payment until he paid the union. By letter of May 9, 1991, the union notified Mr. Aldridge that he had violated the contract by failing to hire employees through the union referral procedure. Significantly, none of the Rivers & Roads employees who worked on the project has ever been a member of the Operating Engineers, Local 312. None has signed or delivered to Rivers & Roads a dues checkoff authorization.

As a result of Fru-Con's refusal to pay Rivers & Roads for the last two months, Rivers & Roads filed an Unfair Labor Practices Charge at the National Labor Relations Board, alleging that the agreement and actions of Fru-Con violated Section 8 of the National Labor Relations Act. The charge was subsequently withdrawn.

The plaintiffs filed suit in October 1991 claiming payments due them pursuant to the Agreement. The defendant filed another charge with the National Labor Relations Board alleging that the complaint violated section 8 of the National Labor Relations Act. The Board did not issue a complaint.

The only remaining parties to the suit are Operating Engineers Local 312 Health and Welfare Fund, and Operating Engineers Local 312 Joint Apprenticeship & Training Fund as plaintiffs and counterdefendants, and Rivers & Roads, Incorporated, as defendant and counterplaintiff.

■ The government has placed restrictions on financial transactions of labor and management, making it unlawful for "any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or other thing of value" in their dealings. 29 U.S.C. § 186(b)(1). Exceptions, however, are allowed. In 29 U.S.C. § 186(c)(5)(B) and (6), applicable exceptions are established. Pertinent portions read as follows:

(c) The provisions of this section shall not be applicable ... (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents.... *Provided*, That ... (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon ...; (6) with

respect to money or other thing of value paid by any employer to a trust fund established by such representative for the purpose of pooled vacation, holiday, severance or similar benefits, or defraying costs of apprenticeship or other training programs: *Provided,* That the requirements of clause (B) of the proviso to clause (5) of this subsection shall apply to such trust funds;

The only references to fringe benefits in the Agreement are found in Article XII which mentions that they will be in accordance with the project wage addendum incorporated by reference. The Agreement itself specifically states that the Employer will be furnished appropriate trust documents by the Unions covering funds into which the contributions shall be made. The Employer will contribute *unspecified* amounts to "bona fide ... health and welfare, apprenticeship and training funds covering *Unions' employees.*" The project wage addendum does not specify the detailed basis of the payments. Instead it states that the payments "shall be as determined by the appropriate local unions or trust funds," leaving unresolved whether the union or the trust fund would have final determination in case of disagreement. The language of the contract therefore violates 29 U.S.C. § 186(c)(5)(B) and (6) by failure to be specific. Furthermore, neither movant is in compliance with the clause because the detailed basis of the payments is not set forth with specificity.

The evidence indicates the employees and employers are not equally represented in the administration of either movant fund, as required by statute. Furthermore, no motion, resolution, or other action was taken by the trustees of either fund to authorize suit. The only authorization to sue was given by the union.

Rivers & Roads has argued that the Agreement did not apply to its employees— pilots and deckhands on the tugboat Geri A leased to Fru–Con. All work performed by Rivers & Roads employees was on board the boat and on the public navigable waterway, the Black Warrior River. The tug moved from point to point on the perimeter of the construction site, thus precluding defendant employees from employment as defined in the phrase: "Employment begins and ends at each project site."

While there is merit in the argument, the court has had to give weight to the rulings of the National Labor Relations Board [hereinafter the Board] that the tug was engaged in construction. By letter of April 14, 1992, to Mr. C.V. Stelzenmuller, Attorney for Rivers & Roads, in reply to its charged violation of Section 8 of the National Labor Relations Act, the Board referred to the work of the tugboat as "an integral and substantial part of the construction process." The Board considered the work performed by Rivers & Roads to be "on-site construction work."

An appeal of the above ruling was denied. By letter of June 19, 1992, the Board upheld the earlier ruling reiterating that "the tugboat was an integral and substantial part of the construction process."

The ruling today, however, does not rest on the issue of whether or not defendant employees were construction employees. Rivers & Roads' employees were not represented by the signatory unions as required by the preamble to the Agreement, nor were they represented by any other union. They were not union employees. They never signed dues checkoff authorization. As a matter of contract interpretation, the Agreement did not apply to them.

Not until after suit was filed did the union furnish Rivers & Roads the appropriate trust instruments called for in Article XII. The defendant has argued that this was a condition precedent which was not fulfilled. While it is true that the union did not furnish Rivers & Roads the trust documents, failure to do so is not, alone, the basis for the court's decision. Of more importance is the fact that there is no trust document for "Operating Engineers Local 312 Administrative Dues Fund." There is no trust. There are no trustees. The evidence indicates plaintiff "Operating Engineers Local 312 Administrative Dues Fund" is the same as International Union of Operating Engineers Local 312 which is not a § 302(c) trust or ERISA fund of any

kind. It is simply a name used to collect union dues from employers. In this case the funds were collected and demanded contrary to 29 U.S.C. § 186(c)(4). Since none of the Rivers & Roads employees was a union member and since none had authorized payment of union dues, the payments were illegal.

For the reasons set forth above, the court holds that the defendant is due summary judgment as a matter of law.

■ Rivers & Roads has filed counterclaims against the counterdefendants, Operating Engineers Local 312 Health and Welfare Fund, and Operating Engineers Local 312 Joint Apprenticeship & Training Fund. In March and April 1991, Rivers & Roads paid $3,715.05, by three checks, to "O.E. Local 312 Benefit Funds." The three checks were deposited April 29, 1991, into National Bank of Commerce account number 206089544060, identified on the stamped endorsement as "Operating Engineers Local 312 Trust Fund." On the same date, $2,829.55 paid by Rivers & Roads was deposited into accounts of Operating Engineers Health and Welfare Fund,[3] Operating Engineers Apprenticeship Fund,[4] and IUOE Local 312,[5] at the National Bank of Commerce. Of the money paid by Rivers & Roads, $885.50 was not accounted for. The counterplaintiff assumes the money was paid to the Operating Engineers Central Pension Fund, an original party plaintiff, since dismissed without prejudice to counterclaims against the other plaintiffs.

This court is well aware of the holding in *Dime Coal Co. v. Combs,* 796 F.2d 394 (11th Cir.1986), by which the court held there was no implied right of action in ERISA cases and that an employer could not recover contributions made to an ERISA welfare fund because of mistake of fact.[6] Unlawfulness of the payments was

not an issue as it is in the case at bar. *Dime* dealt with a narrowly drawn statute which read:

> In the case of a contribution ... (ii) made by an employer to a multiemployer plan by mistake of fact or law ..., paragraph (1) shall not prohibit the return of such contribution or payment to the employer within *six months* after the plan administrator determines that the contribution was made by such a mistake.

29 U.S.C. § 1103(c)(2)(A)(ii) (1982) (emphasis added). The trustees had taken the position that to return the mistaken overpayments would violate their statutory obligation to ensure that the assets of the Funds were used "for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1) (1982).

*Dime* did not deny restitution of overpayments in all circumstances. The opinion points out the following:

> Dime Coal, in its amended complaint, "invoke[d] the equity jurisdiction of [the district court], and aver[red] that it [was] entitled, as a matter of equity, to a refund of the excess contributions or overpayments it made to the [trustees]." The opinion and order of the district court provides no indication whether ... [it] intended to rely ... on this alternate ground.... *Dime Coal has not clearly argued the sufficiency* of this basis for sustaining the district court's decision on this appeal.... *Although the question is not well presented,* ... we hold that no federal common law right to recovery of the disputed contributions at issue in this case exists.

796 F.2d at 399, n. 7 (emphasis added).

The present case is distinguishable from *Dime.* The payments were not made on a

---

3. $2,072.40 was deposited into the same numbered account into which the $3,715.05 was deposited on the same day. It appears this was a redeposit from the same account itself. Counterdefendants have not produced all the deposit slips and accounting entries, as requested.

4. $259.05 was deposited into account number 20305017601.

5. $489.10 was deposited into account 20301408101, a general account—not an ERISA trust or § 302 trust account. The deposit slip bears the typewritten notation "O/E Dues 4/3/91."

6. Dime made a mistake of calculation of coal tonnage actually produced.

mistake of fact. Their repayment is not regulated by a statutory time frame. The payments were illegal. In the case of plaintiff Local 312 Administrative Dues Fund there were no trustees obligated to provide for the plan and its participants. Local 312 Administrative Dues Fund was and is not an ERISA fund or welfare fund. It is an assumed name of Local 312 used for the collection of union dues, which in the instant case represents collection of union dues for nonunion employees who had not authorized their collection as required by 29 U.S.C. § 186(c)(4).

Because the payments were not mistakes, but unlawful collections, the court holds that Rivers & Roads is entitled to recover the payments it made into the movant funds. The counterdefendants must make restitution. Accordingly, the court grants Rivers & Roads summary judgment on its counterclaims.

An order consistent with this opinion is being entered contemporaneously herewith.

### FINAL ORDER GRANTING SUMMARY JUDGMENT

This cause comes before the court on the motion of plaintiffs Operating Engineers Local 312 Health and Welfare Fund, and Operating Engineers Local 312 Joint Apprenticeship and Training Fund for summary judgment, and on the motion of the defendant Rivers & Roads, Incorporated, for summary judgment in its favor on each claim against it and on the question of liability on its counterclaims against the counterclaim defendants, Operating Engineers Local 312 Health and Welfare Fund, and Operating Engineers Local 312 Joint Apprenticeship and Training Fund. Having considered the motions, the pleadings, the submissions of counsel, and the applicable law, the court is of the opinion that judgment should be granted the defendant as a matter of law, there being no genuine issue of material fact, and there being no just reason for delay in entering a final judgment. Accordingly, in conformity with the memorandum opinion being entered contemporaneously herewith, it is

ORDERED, ADJUDGED and DECREED that the motion of plaintiffs Operating Engineers Local 312 Health and Welfare Fund, and Operating Engineers Local 312 Joint Apprenticeship and Training Fund for summary judgment be and it hereby is DENIED. It is

FURTHER ORDERED, ADJUDGED and DECREED that the motion of the defendant Rivers & Roads, Incorporated, for summary judgment be and it hereby is GRANTED. It is

FURTHER ORDERED, ADJUDGED and DECREED that the motion of Rivers & Roads, Incorporated, for summary judgment in its favor on its counterclaims against the counterdefendants, Operating Engineers Local 312 Health and Welfare Fund, and Operating Engineers Local 312 Joint Apprenticeship and Training Fund be and it hereby is GRANTED. It is

FURTHER ORDERED, ADJUDGED and DECREED that the counter-defendants make restitution to Rivers & Roads, Incorporated, for $1,053.50 paid March 25, 1991; $1,419.00 paid April 12, 1991; and $1,240.55 paid April 19, 1991, totaling $3,713.05, plus interest calculated from the dates paid in the total amount of $407.58, for a total restitution payment of $4,120.63. It is

FURTHER ORDERED, ADJUDGED and DECREED that FINAL JUDGMENT be and it hereby is ENTERED in favor of the defendant Rivers & Roads, Incorporated, and the plaintiffs shall have and recover nothing of the defendant in this action.