MARSHALL COUNTY BOARD
OF EDUCATION, Plaintiff,

J.B. Carlton; Edward Nesmith, Customers of The Marshall County Gas District who bring this action on their own behalf and on behalf of all other customers of the Marshall County Gas District similarly situated; J. Rayford Brothers, Plaintiffs–Appellants,

v.

MARSHALL COUNTY GAS DISTRICT, a public corporation; Arthur Baugh, individually and in his official capacities as a member of the Board of Directors of the Marshall County Gas District and as Mayor of the City of Albertville, Alabama; Johnny Hart, individually and in his official capacities as a member of the Board of Directors of the Marshall County Gas District and as Mayor of the City of Arab, Alabama; Robert Kelly, in his official capacities as a member of the Board of Directors of the Marshall County Gas District and as Mayor of the City of Guntersville, Alabama; City of Albertville, a municipal corporation; City of Arab, a municipal corporation; City of Guntersville, a municipal corporation, Defendants–Appellees.

No. 92–6471.

United States Court of Appeals,
Eleventh Circuit.

June 8, 1993.

Lawrence B. Clark, Morris Wade Richardson, Lange, Simpson, Robinson & Somerville, Birmingham, AL, for plaintiffs-appellants.

Charles R. Hare, Jr. Gullahorn & Hare, P.C., Albertville, AL, for Carlton, Nesmith and Rayford Bros.

R. Stan Morris, Lawrence T. King, Harris, Evans, Berg, Morris & Rogers, P.C., Birmingham, AL, Dave Beuoy, Burke & Beuoy, Arab, AL, for City of Arab, AL.

James C. Huckaby, Jr., William Slaughter, Haskell, Slaughter, Young & Johnston, P.C., Birmingham, AL, for Marshall Co. Gas Dist.

W. Lee Thuston, Mac B. Greaves, Sadler, Sullivan, Herring & Sharp, P.C., Birmingham, AL, for Baugh, Hart and Kelley.

Randy Beard, Guntersville, AL, for City of Guntersville.

Before FAY, Circuit Judge, JOHNSON, Senior Circuit Judge, and MERHIGE *, Senior District Judge.

FAY, Circuit Judge:

The plaintiffs, customers of the Marshall County Gas District, allege claims pursuant to 42 U.S.C. § 1983 for deprivation of property in violation of the Fifth and Fourteenth Amendments to the United States Constitution arising out of the distribution of bond proceeds by the defendant gas district. The trial court dismissed the claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a cause of action. Because the plaintiffs have no property interest in the bond proceeds and did not show an interest in the rates paid for gas services sufficient to withstand a 12(b)(6) motion, we AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

The Marshall County Gas District [the District] is a public corporation organized pursuant to and under the authority of the Alabama Code by the Cities of Albertville, Arab, and Guntersville [the Member Municipalities]. Although it is an instrumentality or agency of the state, control of the District is vested in a Board of Directors composed of individuals who represent the Member Municipalities.[1] The District transports, distributes and sells gas and gas services to substantially all of Marshall County except for the City of Boaz, which has its own municipal system. The District is not subject to regulation and Board decisions are not reviewable by any state regulatory agency, including the Alabama Public Service Commission. The Board is free to set rates and charges for gas and gas services furnished by the District without the approval of any local, state, or federal regulatory agency.

The District is statutorily authorized to borrow money and to issue bonds payable solely out of the revenues from operation of its natural gas transmission and distribution system.[2] The District, through its Board of Directors, authorized the sale and issuance of Gas Revenue Bonds, Series 1989 [Series 1989 Bonds] in the principal amount of $7,015,000. The bonds were issued on September 12, 1989, under a Trust Indenture from the District to Southtrust Bank in Birmingham, Alabama. The District received approximately $6,609,032 from Southtrust for the Series 1989 Bonds, of which $609,032 was deposited in the District's debt service reserve fund and $6,000,000 was distributed in equal shares of $2,000,000 to the Member Municipalities. The principal and interest payment

---

* Honorable Robert R. Merhige, Jr., Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation.

1. The governing body of each city appoints one member to the Board of Directors. At all relevant times, the members of the Board were the mayors of the three member cities.

2. Section 11–50–396 in relevant part provides the following:

Each district incorporated under this article shall have each and all of the following powers
. . .
(6) To borrow money for any corporate purpose and to issue in evidence of the borrowing interest-bearing bonds payable solely from the revenues derived from the operation of any one or more of its systems. . . .
ALA.CODE § 11–50–396(6) (1992).

due on the $7,015,000 debt are payable solely out of the revenues collected by the District. The Member Municipalities are in no way responsible for the debt of the District.[3]

Alabama law defines and authorizes the District to distribute "net income" to the Member Municipalities.[4] The District's stated purpose for the Series 1989 Bonds was three-fold: to reimburse the District for capital improvements to the gas distribution system made in past years with internally generated funds, to reimburse the District for depreciation of certain assets, and to establish certain reserve funds. According to the District, "net income" could have been paid to the Member Municipalities in prior years if not for these expenditures. Thus, the District viewed the $2,000,000 distributions to the Member Municipalities as "net income" that would have been available for distribution during past years had it not been for the monies expended for capital improvements and reserve funds.

The plaintiffs, customers who reside in the District but outside the three municipalities, filed this class action asserting claims pursuant to Title 42 U.S.C. § 1983 for violation of their rights under the Fifth and Fourteenth Amendments to the United States Constitution.[5] The plaintiffs sought declaratory and injunctive relief, and damages arising out of the allegedly unlawful transfer of the Series 1989 Bond proceeds by the District to the Member Municipalities. They allege this transfer resulted in higher rates for gas and gas services and constituted an unconstitutional taking of their property without just compensation in violation of their rights to substantive due process and equal protection.

Specifically, the plaintiffs assert a property right in the Series 1989 Bond proceeds distributed to the Member Municipalities and claim they are legally entitled to have the proceeds applied only for those purposes authorized by the Alabama Code. The plaintiffs take issue with the $6,000,000 distribution, claiming the District made an illegal transfer to the Member Municipalities because (a) the bond proceeds did not constitute distributable "net income" as defined by Alabama Code § 11–50–411, or (b) the distributions substantially exceeded the "net income" that could have been distributed at the time. As a result of the allegedly unlawful payment of $6,000,000 to the Member Municipalities, the plaintiffs claim the District increased the rates for gas and gas services to provide the additional revenues necessary to service the principal and interest on the Series 1989 Bonds. They argue that had the District retained the bond proceeds in interest-bearing obligations, or invested in new revenue-producing extensions, improvements or additions to the distribution system, the District's revenues would have increased and thus enabled the District to reduce, or at least not increase, its rates for gas and gas services. The plaintiffs reason that the distribution by the District, and the taking by the Member Municipalities, of the bond proceeds imposed an impermissible burden on

---

**3.** Section 11–50–409 in relevant part provides:

The bonds ... of any district incorporated under this article shall not be a debt or obligation of the State of Alabama nor a debt or obligation of any municipality which is a member of the district; and neither the state nor any such municipality shall be liable in any way whatsoever thereon, nor may the holder of any such bonds or obligations compel the levy of any taxes for the payment thereof.

Said bonds shall not be payable out of any funds other than the revenues of the gas system or systems of the district issuing the same....

ALA.CODE § 11–50–409 (1992).

**4.** Section 11–50–411 reads in relevant part:

All the net income of the gas transmission system or systems, for each fiscal year, of a gas district incorporated under this article shall.... be divided, within a reasonable time after the close of each fiscal year, among its member municipalities in proportion to the amount of gas sold to or within each such municipality.

....

The term "net income" ... shall mean, with respect to the system or systems and for the fiscal year in question, the net income thereof computed in accordance with generally accepted accounting principles plus depreciation and amortization less [certain sums defined in this section]....

ALA.CODE § 11–50–411 (1992).

**5.** The complaint also sets forth a claim for conspiracy in violation of 42 U.S.C. § 1985 and a pendent state law claim. The plaintiffs have not appealed the trial court's order dismissing the § 1985 claim and refusing to exercise supplemental jurisdiction over the state law claim.

them because ultimately the proceeds were spent by the Member Municipalities on projects beneficial to city residents, but of no benefit to the nonresident plaintiffs. They further reason their property has been wrongfully taken, in the form of higher rates for gas services, to service the debt from which they did not benefit.

During a hearing on discovery disputes, the magistrate judge *sua sponte* directed the parties to submit briefs on the issues of (1) subject matter jurisdiction, (2) the grounds for the constitutional rights allegedly violated, and (3) the applicability of the Johnson Act, 28 U.S.C. § 1342. Following submission of these briefs, and in accordance with *Dime Coal Co. v. Combs*, 796 F.2d 394, 396 (11th Cir.1986), the district court found that it had subject matter jurisdiction and addressed the *sua sponte* order as a challenge to the plaintiffs' federal cause of action under Federal Rule of Civil Procedure 12(b)(6).

The trial court predicated the dismissal of all § 1983 claims upon its holding that the complaint asserted a property interest in the actual rates paid for gas and gas services, rather than a property interest in the proceeds from the Series 1989 Bonds. Because the only burden borne by the plaintiffs is the burden to pay a set rate for gas and gas services, and because the plaintiffs failed to allege facts sufficient to show that other customers of the District did not bear the same burden, the trial court dismissed the § 1983 equal protection claim. The court also dismissed the § 1983 takings claim, reasoning that the bond proceeds are the property of the District, not the customers, and that the plaintiffs' property interest in the rates paid for gas and gas services did not rise to the level of an unconstitutional taking because the fee was imposed to reimburse the government for the cost of services rendered. Since there was no deprivation of a constitutionally protected property interest under

the Fifth Amendment, the court dismissed the Fourteenth Amendment substantive due process claim as well. *See Rymer v. Douglas County*, 764 F.2d 796, 801–02 (11th Cir.1985) (The test for violation of a substantive due process right "adds little or nothing that the taking clause does not encompass.").[6]

## STANDARD OF REVIEW

■ This court reviews de novo the trial court's order dismissing the complaint. *Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1539 (11th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 55, 116 L.Ed.2d 32 (1991). The factual allegations in the complaint must be taken as true for purposes of a motion to dismiss. *Id.* Dismissal is appropriate where it is clear the plaintiff can prove no set of facts in support of the claims in the complaint. *Powell v. United States*, 945 F.2d 374 (11th Cir.1991). Accordingly, the court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action. *Executive 100*, 922 F.2d at 1539. *See also Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). Such is the case here since the existence of a property interest turns purely on the law.

## DISCUSSION

In order to prevail in a civil rights action under section 1983, "a plaintiff must make a prima facie showing of two elements: (1) that the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law."[7]

*Bannum, Inc. v. City of Ft. Lauderdale*, 901 F.2d 989, 996–97 (11th Cir.1990) (citation

---

6. The trial court found it unnecessary to decide whether the Johnson Act prohibited the federal court from exercising jurisdiction over this action.

7. Section 1983 provides in pertinent part:
    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subject-

ed, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
    42 U.S.C. § 1983 (1988).

omitted). The issue before the court is whether the plaintiffs have identified a property interest protected by the Constitution sufficient to state a claim for relief under 42 U.S.C. § 1983. We find the plaintiffs have no vested property interest in the Series 1989 Bond proceeds. Furthermore, the property taken in the form of higher rates is a fee properly imposed for service rendered by the District. We therefore affirm the trial court's order dismissing all § 1983 claims.

The Supreme Court has enunciated the principles defining a property interest within the meaning of the Fourteenth Amendment:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. *He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.* It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined....
>
> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by *existing* rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) (emphasis added). Therefore, to demonstrate a protected property interest in the bond proceeds, the plaintiffs must show existing Alabama law vesting them with the right to prevent the District from distributing the $6,000,000 to the Member Municipalities.

Plaintiffs' counsel skillfully attempts to do just this by pointing to Article 12 of the Alabama Code governing the creation and delineating the authority of gas districts. Municipalities are "authorized ... to organize[ ] and incorporate[ ] a gas district as a public corporation with all the power and authority provided in [Article 12] for the purpose of securing ... a supply of ... gas and for the purpose of transporting gas and for the purpose of the local distribution and sale of gas and gas services...." ALA.CODE § 11–50–391 (1992). The District has the power "to borrow money for any corporate purpose and to issue in evidence of the borrowing interest-bearing bonds...." ALA. CODE § 11–50–396(6) (1992). Bonds can also be issued to refund bonds previously issued or "for the combined purpose of so refunding any outstanding bonds and of acquiring, constructing, providing, improving or extending any gas system or systems." ALA.CODE § 11–50–405 (1992). "All moneys derived from the sale of any bonds issued by any district ... shall be used solely for the purpose or purposes for which the same are authorized...." ALA.CODE § 11–50–406 (1992).

The plaintiffs read these statutes as empowering the District to issue bonds only for the corporate purposes "authorized" in § 11–50–391 and § 11–50–405. Because the stated purpose of the bond, to reimburse the Member Municipalities for net income not distributed in prior years, is not expressed in the statute it is purportedly unauthorized and unlawful. By virtue of being customers whose payments to the District provide the only source of funds available to service the "unauthorized" bond debt,[8] the plaintiffs conclude they are legitimately entitled to demand the proceeds be returned to the District.

The plaintiffs' difficulty is they have not shown any law presently existing in Alabama vesting them with a property interest in the bond proceeds. There is no language in Article 12 plainly and affirmatively securing for them such an interest. We have not been cited to any court opinion interpreting Article 12, or any other binding state decisional law, that bestows a benefit to the plaintiffs in the form of an interest in the bond proceeds. *Cf. Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9–10, 98 S.Ct. 1554, 1560–

---

8. The Member Municipalities assume no liability for bonded debt. *See* ALA.CODE § 11–50–409, *supra* note 3.

61, 56 L.Ed.2d 30 (1978) (in § 1983 action plaintiffs asserted a legitimate claim of entitlement within the due process clause of the Fourteenth Amendment to continued utility service because Tennessee decisional law held a public utility liable for damages resulting from wrongfully terminated service where the utility bill was the subject of a bona fide dispute). Nor have the plaintiffs directed our attention to any understanding, such as custom or usage in the public utility business, entitling them to a property interest in the proceeds.[9] In essence, they would have the federal court engraft their property interest onto Article 12 when neither the state courts nor the Alabama legislature have created one. In the words of the Supreme Court, the plaintiffs assert nothing more than a "unilateral expectation" of a property interest in the bond proceeds insufficient to state a claim under 42 U.S.C. § 1983. *See Roth*, 408 U.S. at 577, 92 S.Ct. at 2709.

■ We now turn to the plaintiffs' purported property interest in that portion of their utility payments used to pay the debt created by the Series 1989 bonds. The plaintiffs clearly have a property interest in the money they own. We assume they correctly allege the District increased rates in direct proportion to the cost of debt service on the bonds, demonstrating a direct taking of the plaintiffs' money to pay the bond debt. From here the plaintiffs argue "[t]his rate tax violates [their] right not to have their property taken without just compensation, their right to due process of law, and their right to the equal protection of the law." Appellants' Reply Brief at 4.

Their argument ignores the fact that the plaintiffs have purchased gas services in exchange for their money. They have paid a fixed rate, whether it was a reasonable or unreasonable one, for the services provided by the District, but in either case they fail to state a legal claim. "[A] reasonable user fee is not a taking if it is imposed for the reimbursement of the cost of government services. 'A governmental body has an obvious interest in making those who specifically benefit from its services pay the cost....'" *United States v. Sperry Corp.*, 493 U.S. 52, 63, 110 S.Ct. 387, 395, 107 L.Ed.2d 290 (1989) (quoting *Massachusetts v. United States*, 435 U.S. 444, 462, 98 S.Ct. 1153, 1165, 55 L.Ed.2d 403 (1978). The plaintiffs contest the fee charged by a governmental entity for the use of services provided by that entity, yet they have directly benefitted from those services. The complaint does not allege that the rates are unreasonable. If the plaintiffs received fair value in exchange for their payment, and they do not argue otherwise, the District has done nothing more than impose a reasonable user fee as a reimbursement for the cost of government services and is entitled to have the claim dismissed as a matter of law.

■ Alternatively, if a portion of the rate charged by the District in reality bears no relation to the value of the gas services provided (which the plaintiffs vehemently say they do not claim but which their argument in fact implies), then the crux of the argument is that the District charges unreasonable rates for its services. Challenges to public utility rates are matters for state courts.[10] In the plaintiffs' own words "[t]he

---

**9.** A property interest founded upon custom or usage may be a factual determination, in which case a 12(b)(6) dismissal would be inappropriate. We need not decide this question, however, since the complaint does not even allege a property interest on this basis.

**10.** Although we do not reach the question of whether the Johnson Act bars jurisdiction, the unambiguous language of the statute expresses Congress' intent that federal courts should not interfere with a state's control over public utility rates. The Act provides in pertinent part:

The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administra-

tive agency or a rate-making body of a State political subdivision, where:

(1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,

(2) The order does not interfere with interstate commerce; and,

(3) The order has been made after reasonable notice and hearing; and,

(4) A plain, speedy and efficient remedy may be had in the courts of such State.

The Johnson Act, 28 U.S.C. § 1342 (1988). *See also Tennyson v. Gas Service Co.*, 506 F.2d 1135 (10th Cir.1974) (holding the Johnson Act forbade federal court jurisdiction in a class action suit brought under 42 U.S.C. § 1983) By the Johnson Act's "broad wording it is clear that it was

District, like a municipality, is an instrumentality or agency of the state...." (R1–1–18). The District is an artificial entity and, as previously explained, is created and empowered by state law. Whether the plaintiffs have been wrongfully required to pay for the bond debt through increased rates is a question properly assigned to state courts.

## CONCLUSION

For all of the foregoing reasons, we dismiss all claims under 42 U.S.C. § 1983.

AFFIRMED.

JOHNSON, Senior Circuit Judge, dissenting:

I dissent. The plaintiffs appeal from the district court's order dismissing their claims brought pursuant to 42 U.S.C. § 1983 alleging (1) a violation of their rights to equal protection, (2) a taking of their property without just compensation, and (3) a violation of their rights to substantive due process. Although I agree with the majority that the plaintiffs' complaint fails to state a cognizable substantive due process claim because the plaintiffs do not have a property interest in the proceeds of the Series 1989 Bonds, the complaint clearly states cognizable equal protection and takings claims. Because the complaint states a claim for which relief may be granted, I would remand the case to the district court for a determination of whether the Johnson Act prevents the federal courts from exercising jurisdiction over this case.

### I. The Complaint States a Cognizable Claim

#### A. Takings claim

The plaintiffs' takings claim is that the District took their property in the form of higher rates without providing a corresponding benefit. This allegation states a claim under the Takings Clause for which relief may be granted.

In determining whether the taking of money constitutes an unconstitutional taking, the Supreme Court has examined the taking against a standard of reasonableness. *See United States v. Sperry Corp,* 493 U.S. 52, 62, 110 S.Ct. 387, 395, 107 L.Ed.2d 290 (1989). The amount taken is reasonable if it is a "fair approximation of the costs of benefits supplied." *Massachusetts v. United States,* 435 U.S. 444, 463 n. 19, 98 S.Ct. 1153, 1165 n. 19, 55 L.Ed.2d 403 (1978). Thus, to state a takings claim, the plaintiffs' complaint must allege that the rates charged are unreasonable. The majority holds that the plaintiffs have failed to state a claim because "[t]he complaint does not allege that the rates are unreasonable." The majority is incorrect. The complaint states that the distribution of the proceeds of the Series 1989 Bonds to the Member Municipalities resulted in the District "fixing and establishing rates for gas and gas service *higher than would have been reasonable.*" Complaint ¶ 32 (emphasis added). Accordingly, the plaintiffs have stated a takings claim.

#### B. Equal protection claim

The plaintiffs' equal protection claim is that the District impermissibly distinguished between rate-payers living within the Member Municipalities and rate-payers living outside the Member Municipalities—although all customers of the District share equally in paying for the bond issue, the revenue realized from the bond issue flows only to those customers who reside in the Member Municipalities. This allegation states a claim under the Equal Protection Clause for which relief may be granted.

"The Equal Protection Clause 'is essentially a direction that all persons similarly situated should be treated alike.'" *Spence v. Zimmerman,* 873 F.2d 256, 258 (11th Cir.1989) (quoting *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985)). "When a state distributes benefits unequally, the distinctions it makes are subject to scrutiny under the Equal Protection Clause of the fourteenth amendment." *Zobel v. Williams,* 457 U.S. 55, 61, 102 S.Ct. 2309, 2313, 72 L.Ed.2d 672 (1982). *See Hooper v. Bernalil-*

intended to keep constitutional challenges to orders affecting rates out of the federal courts

'lock, stock and barrel'...." *Id.* at 1138.

**1178**

*lo County Assessor,* 472 U.S. 612, 618, 105 S.Ct. 2862, 2866, 86 L.Ed.2d 487 (1985) (plaintiffs' challenge to tax exemption for veterans states equal protection claim); *Town of Ball v. Rapides Parish Police Jury,* 746 F.2d 1049, 1057–58 (5th Cir.1984) (plaintiffs' challenge to distribution of tax revenues states equal protection claim). Thus, the Plaintiffs' claim that benefits are being distributed unequally should not have been dismissed for failure to state a claim.

## II. Johnson Act

Although the plaintiffs' complaint does state a claim, the Johnson Act may deprive the district court of jurisdiction to entertain the complaint. The plaintiffs' suit is essentially one challenging the rate charged by the District for services, and as this Court has previously noted, "the Johnson Act has been broadly construed to prohibit federal court actions that indirectly as well as directly affect rate orders." *Carlin Communication, Inc. v. Southern Bell Tel. & Tel. Co.,* 802 F.2d 1352, 1356 (11th Cir.1986).

The majority relies on the broad sweep of the Johnson Act for its alternate holding that even if the plaintiffs had stated a claim, their claim should be heard in state court. In reaching this alternate holding, the majority ignores the plain language of the Act. For the Johnson Act to apply, the District's order increasing its rates must have been preceded by reasonable notice and hearing. 28 U.S.C. § 1342(3). In this case, there is a question as to whether the District gave any notice at all prior to the rate increase, much less whether it gave reasonable notice.

Whether the District gave reasonable notice is a jurisdictional fact, which this Court reviews under the clearly erroneous standard. *Lawrence v. Dunbar,* 919 F.2d 1525, 1530 (11th Cir.1990). *See Nucor Corp. v. Nebraska Public Power Dist.,* 891 F.2d 1343, 1347 (8th Cir.1989) (reviewing reasonableness of Johnson Act notice for clear error), *cert. denied,* 498 U.S. 813, 111 S.Ct. 50, 112 L.Ed.2d 26 (1990). Unfortunately, there is no factual finding to review in this case because the district court declined to reach the question of whether it had jurisdiction under the Johnson Act. When jurisdiction turns on

a factual finding, the relevant facts must first be found by the trial court. *See Registration Control Systems, Inc. v. Compusystems, Inc.,* 922 F.2d 805, 808 (Fed.Cir.1990). Therefor, I would remand this case to the district court for a factual finding as to whether notice of the rate increase was reasonable.