**Andrew Harley SPEAKER, Plaintiff,**

**v.**

**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES CENTERS FOR DISEASE CONTROL AND PREVENTION, Defendant.**

No. 1:09–cv–1137–WSD.

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 23, 2009.

**1360**

Craig Thomas Jones, Page Perry LLC, Atlanta, GA, for Plaintiff.

Joshua E. Gardner, United States Department of Justice, Washington, DC, Neeli Ben–David, U.S. Attorney's Office, Atlanta, GA, for Defendant.

### OPINION AND ORDER

WILLIAM S. DUFFEY, JR., District Judge.  ·

This is an action for damages under the Privacy Act, 5 U.S.C. § 552a. It is before the Court on Defendant the United States Department of Health and Human Services Centers for Disease Control and Prevention's ("Defendant" or "the CDC") Motion to Dismiss Plaintiff's Amended Complaint and, In the Alternative, Motion for Partial Summary Judgment [25].[1]

## I.  BACKGROUND

In the summer of 2007, the print and broadcast media reported on the possibility that Plaintiff Andrew Harley Speaker ("Plaintiff" or "Speaker") had traveled on a transatlantic, commercial flight while infected with a rare, drug-resistant, and potentially deadly strain of tuberculosis. Speaker claims he was told by public health officials he had multi-drug resistant tuberculosis (MDR–TB) but was not contagious, and thus had flown to Europe on May 12, 2007, for his wedding in Greece and his honeymoon in Italy. He planned to receive medical treatment in the United States when he returned.[2] On May 22, 2007, and while in Italy, Speaker was advised by the CDC that his diagnosis had been reclassified and upgraded from MDR–TB to extremely drug-resistant tu-

---

1.  Defendant previously filed a Motion for Summary Judgment [5] and Motion to Stay the Proceedings [6]. Subsequently, and with leave of the Court, Plaintiff filed an Amended Complaint, to which Defendant responds with the motion to dismiss pending before the Court. Defendant's earlier motions are moot.

2.  In ruling on a motion to dismiss, the Court is required to accept the Plaintiff's factual allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), and considers the allegations in the Complaint in the light most favor-

berculosis (XDR–TB). He was told not to return to the United States by commercial airline. Am. Compl. ¶ 67. Believing he was not contagious, and unable to afford the cost of private transportation home, Speaker elected to disregard the CDC's instruction and on May 24, 2007, he flew from Paris to Montreal, Canada and then entered the United States across the Canadian border. *Id.* at ¶¶ 70–73. After entering the United States, Speaker notified the CDC that he had returned to the country. The CDC instructed him to go to Bellevue Hospital in New York City. *Id.* at ¶ 73. When he arrived at Bellevue, Speaker was served with a federal quarantine order. He was later transferred to Grady Hospital in Atlanta and then quarantined at the National Jewish Medical and Research Center in Denver, Colorado, where he was successfully treated for MDR–TB. *Id.* at ¶¶ 74, 76, 78. Speaker's ultimate diagnosis was MDR–TB, not XDR–TB. *Id.* at ¶ 79.

On May 29, 2007, the CDC held the first of several press conferences to address what it believed to be a potential public health crisis. Dr. Julie Gerberding, Director of the CDC, stated at the press event that a tuberculosis patient had arrived in Paris on May 13, 2007, on Air France Flight 385 from Atlanta, Georgia. Defendant's Statement of Material Facts ("DSMF") ¶ 4. Dr. Gerberding further stated that the patient's tuberculosis organism was extremely resistant to the drugs normally used to treat infection, *id.* at ¶ 5, that the patient lived in Atlanta, *id.* at ¶ 7, and had returned on Czech Air Flight 0104 from Prague to Montreal and then entered the United States by car on May 24, 2007, *id.* at ¶¶ 4, 6. The CDC held additional press events on May 30, June 1, July 3 and 11, 2007.[3] Am. Compl. ¶ 83.

On May 31, 2007, the Associated Press published an article identifying the "tuberculosis patient under the first federal quarantine since 1963" as Andrew Speaker. The article attributed this information to a "federal law enforcement official" and stated that a "medical official in Atlanta" had confirmed the patient's name "on condition of anonymity."

Speaker claims that the CDC, in violation of the Privacy Act, 5 U.S.C. § 552a, disclosed protected information concerning his identity and his confidential medical history, and unlawfully released personally-identifying details, such as the facts that he had flown to Greece to get married and that he was a lawyer in Atlanta, which would have allowed his identity to become known even if the CDC had not directly disclosed it. Am. Compl. ¶ 85. Speaker contends there was no legitimate need for his identity to be made public for the CDC to accomplish any legitimate public health purpose. *Id.* Speaker seeks damages to his personal and professional reputation. *Id.* at 114–16.

A. *The Subject Disclosures*

The Amended Complaint in this action, which consists of 117 paragraphs, asserts a single claim for recovery. The Amended Complaint alleges:

1. The CDC maintained private health information about Speaker. Am. Compl. ¶ 105.

2. Certain unspecified "aforementioned disclosures" by the CDC about "Speaker and his status as a tuberculosis patient resulted in the release of private identifiable information contain in [the CDC's] system of records, including Mr. Speaker's

able to the Plaintiff. *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir.2007).

3. The publicity surrounding this case led to the United States Senate conducting hearings on this matter on June 6, 2007.

medical history and other protected health information, the confidentiality of which is mandated by the Privacy Act." *Id.* ¶ 106.

3. That the release of information was not authorized, not within an exception under the Privacy Act, and was without Speaker's consent. *Id.* ¶ 107.

4. The information alleged to have been wrongfully disclosed by the CDC included Speaker's identity, city of residence, occupation, wedding travel plans, and medical history, including his present medical condition. *Id.* ¶ 108.

Speaker then alleges that the CDC's release of this personal information violated the Privacy Act, was done willfully and intentionally, and resulted in harm to Speaker and his reputation for which he is entitled to an award of damages. *Id.* ¶¶ 111–12.

A review of the Amended Complaint discloses that the remaining hundred or so paragraphs provide background information about Speaker's understanding of his diagnosis and decisions he made, the various public health entities involved in Speaker's diagnosis and their communications with Speaker, and criticisms of the CDC's handling of and motivations in this matter. Among those few paragraphs that allege disclosures that could constitute the "aforementioned disclosures" in Paragraph 106, and upon which Plaintiff's claim is based, Speaker first alleges general information about the wrongful disclosures he asserts were made:

In May, June and July of 2007, the CDC caused personally identifiable informa-

tion about Mr. Speaker to be improperly disclosed without his consent to law enforcement officials, the news media, and the general public as a result of the deliberate actions of the CDC and its employees or agents. Am. Compl. ¶ 82.

Speaker then describes the disclosures which he contends violated the Privacy Act. He alleges:

Public disclosures to the international news media during press conferences and interviews held on or about May 29 and 30, June 1, and July 3 and 11, 2007;

[O]ther disclosures by CDC agents or employees to members of the media during the time frame of said public press conferences and interviews, including but not limited to information that enabled the media to ascertain Mr. Speaker's identity and whereabouts on or about May 29, 2007 and to publish his name on and after May 31, 2007;

[D]isclosure of Mr. Speaker's identity to law enforcement officers who in turn leaked his identity to the Associated Press between May 29 and 31, 2007;

[C]onfirmation of Mr. Speaker's identity to the Associated Press between May 29 and 31, 2007;

[O]ther disclosures made as part of a media campaign directed toward Mr. Speaker and his disease that will be identified through discovery and proven at trial.[4]

*Id.* ¶ 83.

The Court evaluates, on Defendant's Motion to Dismiss, whether these disclosures, as alleged, are sufficient to state a claim under the Privacy Act.

---

**4.** Speaker alleges this further context for the disclosures claimed: "In making the aforementioned disclosures about Mr. Speaker, the CDC announced to the world that an alleged XDR–TB patient had traveled on transatlantic flights." Am. Compl. ¶ 84. And also: "the CDC unnecessarily and unlawfully released

details of Mr. Speaker's medical history and his alleged medical condition (including the dissemination of a detailed timeline of his medical treatment"), the fact that he had flown to Greece to get married, and the fact that he was a lawyer in Atlanta, all of which

## II. DISCUSSION

### A. Standard for Motion to Dismiss

Defendant moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the claims against it for failure to state a claim upon which relief can be granted.[5] The law governing motions to dismiss pursuant to Rule 12(b)(6) is well-settled. Dismissal of a complaint is appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir.1993). The court accepts the plaintiff's allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), and considers the allegations in the complaint in the light most favorable to the plaintiff. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir.2007). Ultimately, the complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).[6] To state a claim to relief that is plausible, the plaintiff must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* — U.S. —, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "Plausibility" requires more than a "sheer possibility that a defendant has acted unlawfully," and a complaint that alleges facts that are "merely consistent with" liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citing *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

"To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomms.,* 372 F.3d 1250, 1263 (11th Cir.2004) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.") (citations omitted).[7]

would have allowed him to be readily identified even if his identity had not been directly disclosed by the CDC, when there was no need for his identity or the private details of his life to be a matter of public knowledge in order to accomplish any legitimate public health purpose. *Id.* ¶ 85.

5. Defendant has previously argued, in its motions for summary judgment and to stay these proceedings, and during the parties' conference with the Court on August 27, 2009, that Speaker's Complaint should be dismissed under Rule 12(b)(6) for failure to plead sufficient factual content as required by *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal,* — U.S. —, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The Court permitted Speaker to amend his pleading, and Speaker filed his Amended Complaint on August 31, 2009. The additional detail about the disclosures that Plaintiff provided to assert his Privacy Act claim is contained in Paragraph 83 of the Amended Complaint.

6. The Supreme Court explicitly rejected its earlier formulation for the Rule 12(b)(6) pleading standard: "'[T]he accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Twombly,* 127 S.Ct. at 1968 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The Court decided that "this famous observation has earned its retirement." *Id.* at 1969.

7. Federal Rule of Civil Procedure 8(a)(2) requires the plaintiff to state "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). In *Twombly,* the Supreme Court recognized the liberal minimal standards imposed by Federal Rule 8(a)(2) but also acknowledged that "[f]actual allegations must be enough to

**B.** *Analysis*

The Privacy Act provides that: "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency...." 5 U.S.C. § 552a(b). A "record" is defined as:

[A]ny item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph.

5 U.S.C. § 552a(a)(4). The Act defines a system of records as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5).

█ An individual may file a civil action against an agency that fails to comply with the provisions of the Privacy Act "in such a way as to have an adverse effect on [the] individual." 5 U.S.C § 552a(g)(1)(D). To plead an improper disclosure under the Privacy Act, a plaintiff is required to allege specific facts establishing that a protected "record" was disclosed. *Roberts v. U.S. Dep't of Justice,* 366 F.Supp.2d 13, 25 (D.D.C.2005). Boilerplate allegations which mirror the provisions of the Act itself, are insufficient. *Id.*

Speaker alleges five (5) separate claimed violations of the Privacy Act by the CDC:

- "Public disclosure to the international news media during press conferences and interviews held on or about May 29 and 30, June 1, and July 3 and 11, 2007." Am. Compl. at 83(a).

- "Upon information and belief, other disclosures by CDC agents or employees to members of the media during the time frame of said public press conferences and interviews, including but not limited to information that enabled the media to ascertain Mr. Speaker's identity and whereabouts on or about May 29, 2007 and to publish his name on and after May 31, 2007." *Id.* at 83(b).

- "Upon information and belief, disclosure of Mr. Speaker's identity to law enforcement officers who in turn leaked his identity to the Associated Press between May 29 and 31, 2007." *Id.* at 83(c).

- "Upon information and belief, confirmation of Mr. Speaker's identity to the Associated Press between May 29 and 31, 2007." *Id.* at 83(d).

- "Upon information and belief, other disclosures made as part of a media campaign directed toward Mr. Speaker and his disease that will be identified through discovery and proven at trial." *Id.* at 83(e).

The Court considers each of these separately and collectively.

1. *Disclosures at the CDC's press conferences (Am. Compl. ¶¶ 83(a) and (b))* [8]

---

raise a right to relief above the speculative level...." *Twombly,* 127 S.Ct. at 1965.

**8.** The disclosures alleged in Paragraph 83 of the Amended Complaint are introduced in Paragraph 82. In that Paragraph, Speaker does not state that any disclosures were "made," but that the CDC "caused" them to

be made. A claim that a disclosure was "caused" to be made does not allege a disclosure that violates the Privacy Act. 5 U.S.C. § 552a(b). An actionable disclosure must have been made by the defendant. The Court notes that Plaintiff appears to allege in only Paragraph 83(b) that the disclosures were

Speaker alleges that the CDC unlawfully disclosed to the media "personally identifiable" information at the press conferences held on May 29 and 30, June 1, and July 3 and 11, 2007. Am. Compl. at ¶ 83(a). Because Speaker does not identify the information allegedly disclosed, Defendant argues Speaker's lack of specificity requires that his claim to be dismissed because mere legal conclusions, unsupported by any specific factual allegations, are insufficient to allege a plausible claim for relief.

Speaker admits the absence of alleged facts, stating: "The factual omissions pointed out by Defendant are not pleading deficiencies, but evidentiary facts that need to be ascertained by discovery." Pl.'s Br. in Opp. At 6.[9] He argues all that is required in the Complaint is for "Andrew Speaker to allege the deliberate disclosure of his protected private information by the CDC, the fact that the disclosed information was personally identifiable to him, the general timing and circumstances of the disclosure, the nature of the information disclosed, and how the disclosure of the information harmed him." *Id.* at 6–7.

The significant and fatal pleading shortcoming in Paragraph 83 of the Amended Complaint is its reliance on general conclusory allegations that mimic the language of the Privacy Act.[10] In Paragraph 83(a) of the Amended Complaint, Speaker does not identify the information he asserts the CDC unlawfully disclosed at the May, June and July press conferences alleged in that Paragraph. Such vague and summary pleading fails to provide the Court with the factual content required to determine whether the alleged disclosure was a "record" contained in a "system of records" and subject to the protections of the Privacy Act. *See Falwell v. Executive Office of the President,* 158 F.Supp.2d 734, 741–42 (W.D.Va.2001) (plaintiff claiming improper maintenance of a record under the Privacy Act must identify the document at issue). *See also Walker v. United States,* No. 93–2728, 1998 WL 637360, *13 (E.D.La.1998) (dismissing Privacy Act claim where plaintiff failed to specify the information that was allegedly disclosed and failed to allege particulars of disclosure).

The absence of specific information about the disclosures is surprising. The "disclosures" of protected information alleged by Speaker in Paragraph 83(a) were made during specific press conferences and interviews on "May 29 and 30, June 1, and July 3 and 11, 2007." Am. Compl. ¶ 83(a). Although the "disclosures" were made publicly to the press, Plaintiff fails to provide any further detail about the information alleged to have been disclosed during these specific events in violation of the Privacy Act. In Paragraph 83(b), Speaker alleges, this time "upon information and belief," "other disclosures by CDC agents or employees to the media." *Id.* ¶ 83(b).

made by the CDC through its employees or agents. The failure to allege who—an employee or an agent—prevents the Court from drawing an inference that the Defendant is liable for the conduct alleged. Failure to specify who made the disclosure alone requires the Complaint to be dismissed.

9. Speaker urges that his 41–page, 117–paragraph Amended Complaint alleges sufficient factual support for his cause of action. As noted, the vast majority of Speaker's allegations merely provides background information and does not concern at all the CDC's alleged violations of the Privacy Act.

10. In reviewing the disclosures alleged in Paragraph 83 of the Amended Complaint, the Court has reviewed carefully the other allegations to determine if they, when read in conjunction with the asserted disclosures, provide sufficient factual content to state a claim under the Privacy Act.

This "upon information and belief" allegation is more ambiguous and uncertain. Plaintiff does not allege what was disclosed, when it was disclosed, to what news organization disclosure was made, or how the media was "enabled to ascertain Mr. Speaker's identity." What is clear from the allegation itself is that Speaker's identity was not disclosed by the CDC or any other person. If Speaker was identified by a news agency, it was because it discovered Speaker's identity using other information sources. Plaintiff was careful not to allege in Paragraphs 83(a) and (b) that the CDC was the source of information that disclosed Speaker's identity. That likely is because Plaintiff himself acknowledges in the Amended Complaint that public health organizations in Atlanta other than the CDC were involved in diagnosing and treating Speaker's tuberculosis and individuals associated with these other entities may well have been the source of the disclosure of information about which Speaker complains.[11]

In short, from the allegations in these Paragraphs, it is not possible to determine who made a disclosure or the content of it. Speaker does not plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. Absent such factual allegations, Speaker has failed to state a valid claim for relief based on the allegations in Paragraphs 83(a) and (b) of the Amended Complaint.

██ Defendant also argues, and the Court agrees, that the undisputed record shows that the CDC did not unlawfully disclose protected records at the May 29 or May 30, 2007, press conferences.[12] It is undisputed that Speaker's name was not disclosed during either of these press conferences. *See* Defendant's Statement of Material Facts ("SMF") ¶¶ 3, 33. The CDC did state that a patient, who was a lawyer and who was diagnosed with XDR–TB, had traveled from Atlanta to Paris, within Europe, and then from the Czech Republic to Canada. SMF ¶¶ 4–19; 32–53. Speaker asserts that the CDC released enough "personally-identifying details," such as the facts that he had flown to Greece to get married and that he was a lawyer in Atlanta, that his identity became known, even if the CDC did not directly disclose it. Am. Compl. ¶ 85.

██ The details released by the CDC at the May 29 and May 30, 2007, press conferences, however, were not protected "records" and they do not constitute information that would allow a person to specifically identify a person who is the subject of a "record." The Privacy Act definition of a record is specific and detailed. A "record" is that information that, when disclosed, will itself disclose the individual to whom the information pertains. If the disclosed information does not contain information about a specific person, it is not a "record" about an "individual" subject to the Act. This requirement is well-established in the cases that have interpreted the Privacy Act. For example, information that describes more than one person is not an identifying particular. *See, e.g., Pierce v. Dep't of U.S. Air Force*, 512 F.3d 184, 187–88 (5th Cir.2007) (holding that the

---

**11.** Plaintiff alleges that the following public health entities were involved in this matter: Georgia Public Health Laboratory; Fulton County Health Department; and the Georgia Department of Health and Wellness.

**12.** Central to Plaintiff's claims are the May 29 and May 30, 2007, press conferences identi-

fied in his Amended Complaint. Because the authenticity of the statements made by the CDC at those press conferences is not in dispute, the Court may consider those statements under Rule 12 without converting the CDC's motion to dismiss into one for summary judgment. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir.2005).

identification of individual's duty title is not an "identifying particular" under the Privacy Act because it could describe more than one person) (*cert. denied*, — U.S. —, 128 S.Ct. 2092, 170 L.Ed.2d 818 (2008)). The CDC's disclosure of Speaker's diagnosis, his residence in Atlanta, his field of employment, and his flight information does not constitute a violation of the Privacy Act.[13] The information that was disclosed, even when aggregated, did not identify Speaker as the person who was diagnosed with this disease. Speaker could not have been identified without additional information from other sources, if indeed such information were available.[14] *See, e.g.*, *Pierce v. Dep't of Air Force*, 527 F.Supp.2d 522, 527 (S.D.Miss.2006), *aff'd*, 512 F.3d 184 (5th Cir.2007) (newspapers managed to connect plaintiff to certain accusations, but had to resort to information outside what was disclosed).

Speaker's principal Privacy Act theory seems to be that the information disclosed by the CDC provided sufficient "leads" to enable the media and perhaps others to conduct further investigation such that they could finally discover that it was Speaker who was the unidentified person at the center of this public health controversy. Speaker appears to rely on the "identifying particular" language of 5 U.S.C. § 552a(a)(4), asserting that "personally identifiable information," Am.

Compl. ¶ 82, was disclosed that "enabled the media to ascertain Speaker's identity." Am. Compl. at ¶ 83. Speaker appears to reason that disclosed information that can be used as a lead to discover other information that ultimately may allow a person to identify him constitutes "identifying particulars," disclosure of which is prohibited. Plaintiff's reasoning is legally and logically flawed—"personally identifiable information" that might enable a person to conduct an investigation of Speaker's identity is not a "record" under the Privacy Act. The definition of a "record" is unambiguous. What is restricted from disclosure is personal information about a specific, identifiable person. An "identifying particular" that constitutes a record under 5 U.S.C. § 552a(a)(4), is a particular "assigned to the individual such as finger or voice print or a photograph." *Id.* By the Act's terms, an "identifying particular" is limited to those particulars that identify a unique, particular individual. "Identifying particular" does not include general information about an unidentified person who might—or might not—be identifiable by gathering and piecing together information collected through further investigation and from other sources. Plaintiff here does not allege the disclosure of a "record." At most he alleges that a disclosure may have occurred and that discovery is required to determine if a disclosure of a record was made in violation of the Privacy Act.[15]

---

**13.** Defendant correctly notes that neither Speaker's flight information nor his diagnosis was in the public domain on May 29 or May 30, 2007, and therefore could not be used to identify Speaker.

**14.** If the releases at issue here were to constitute a Privacy Act violation as Speaker alleges, it would severely inhibit the reasonable and appropriate conduct of public health officials responding to possible public health emergencies. For example, if public health officials learned that a specific person, while on a business trip to New York, attended a Broadway show and that he had a highly

contagious, fatal disease, under Speaker's interpretation of the Privacy Act, public health officials would be prohibited from issuing an immediate public announcement, without disclosing the person's identity, that an infected person had attended the play, sat in a particular section, and traveled in a particular route in order to warn others attending the performance (and those with whom they came into contact) that their health was in serious danger and to seek immediate medical care.

**15.** Having failed to allege the disclosure of a "record," Speaker does not allege a legally cognizable disclosure under the Privacy Act.

Speaker next argues that the public disclosure of his diagnosis as a XDR–TB patient constitutes an unlawful disclosure under the Privacy Act. Pl.'s Resp. at 9. Medical history can constitute a protected record under the Privacy Act if it contains a patient's name or some other identifying particular. 5 U.S.C. § 552a(a)(4). Speaker, however, cannot dispute that the CDC did not disclose his name or an identifying particular with his medical history at the May 29 or May 30, 2007, press conferences such that a specific "record" was disclosed.[16] This allegation does not identify specific information connected with a specific individual to constitute a disclosure of a "record" about an individual under the Privacy Act.

The Court concludes that Speaker has not alleged that the CDC disclosed a "record" during the May 29 or May 30, 2007, press conferences and Speaker's claimed Privacy Act violations concerning these two press conferences are required to be dismissed. As noted above, the Associated Press identified Speaker by name in an article published on May 31, 2007. The source of the AP's information is not alleged in the Amended Complaint and it could have come from a variety of public and private sources, state public health

agencies or health care providers that treated Speaker.[17] After May 31, 2007, Speaker's identity was known to the public.[18]

### 2. *Disclosure of Speaker's identity to law enforcement (Am. Compl. ¶ 83(c))*

■ Speaker alleges, on information and belief, a "disclosure" of his identity to law enforcement officers "who in turn leaked his identity to the Associated Press between May 29 and 31, 2007." *Id.* at 83(c). Defendant notes that Speaker does not allege that it was *the CDC* that disclosed his identity and that he does not identify who made the alleged disclosure to the unidentified law enforcement officer. Furthermore, Speaker acknowledges there were at least three state public health agencies—the Georgia Public Health Laboratory, the Fulton County Health Department, and the Georgia Department of Health and Wellness—that were involved in this matter and in Speaker's diagnosis and treatment. He does not allege which, if any, of these agencies made the disclosure alleged in Paragraph 83(c). Defendant argues that these omission requires that Speaker's claim be dismissed because Speaker has essentially alleged only that

A "disclosure" "must both be 'about' an individual and include his name or other identifying particular." *Tobey v. NLRB*, 40 F.3d 469, 471 (D.C.Cir.1994). "[E]ven if information could be rather easily manipulated in a way so that one could collect records about an individual, that information per se is not a 'record' about that individual. . . . Under *Tobey*, the question of whether it was an unauthorized disclosure must be resolved on the basis of the information in isolation, not in the context of other information which enables the decoding of the alleged 'disclosure.' " *Leighton v. C.I.A.*, 412 F.Supp.2d 30, 39 (D.D.C.2006).

**16.** These press conferences were broadcast on live television and their content cannot be disputed.

**17.** In his Amended Complaint, Speaker identifies a number of county and state public health organizations (and employees) that were involved in and knew about his various diagnoses.

**18.** The CDC argues that the information it disclosed at the June 1 and July 3, 2007, press conferences and in the July 11, 2007, interview had already been placed in the public domain by Speaker himself, by Speaker's physicians and by the news media. Def. Mot., Sec. V, pp. 14–32. Because the Court finds that Speaker has failed to plead a claim upon which relief can be granted, the Court need not reach the merits of this argument.

the CDC *possibly* acted unlawfully, and has not plead factual content that "allows the court to draw the reasonable inference that the defendant [as opposed to some other nonfederal public health affiliate or private party] is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. The Court agrees.

### 3. *Confirmation of Speaker's identity to the Associated Press (Am. Compl. ¶ 83(d))*

Speaker alleges, also on information and belief, a "confirmation" of his identity to the Associated Press between May 29 and 31, 2007. Am. Compl. at ¶ 83(d). Speaker does not identify who "confirmed" his identity and does not allege that it was the CDC or its employees that provided the "confirmation." The Court concludes that, here again, Speaker alleges facts that are "merely consistent with" liability, establishing a "sheer possibility" that the CDC acted unlawfully, but failing to establish a plausible claim for relief. *Iqbal,* 129 S.Ct. at 1949.

### 4. *Other disclosures (Am. Compl. ¶ 83(e))*

Speaker concludes by alleging, on information and belief, other disclosures made as part of "a media campaign directed towards Mr. Speaker and his disease that will be identified through discovery and proven at trial." Am. Compl. ¶ 83(e). Defendant argues, and the Court agrees, that these factually unadorned, conclusory allegations are unsupported by any facts to identify any particular disclosure in violation of the Privacy Act. This claim is required to be dismissed under Rule 12(b)(6). *See Iqbal,* 129 S.Ct. at 1949 (2009); *see also Walker,* 1998 WL 637360, at *13; *Falwell,* 158 F.Supp.2d at 741–42.

Having examined each of Speaker's five allegations of unlawful disclosure, the Court concludes that Speaker has failed to state a valid claim upon which relief can be granted. Specifically, Speaker does not allege the disclosure of a "record," a necessary predicate for alleging a violation of the Privacy Act. Speaker has not pleaded sufficient factual content regarding the specifics of the alleged disclosures to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. Speaker's allegations are merely consistent with the possibility that the CDC acted unlawfully but "stop[ ] short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citing *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955). Speaker's Amended Complaint is required to be dismissed. This same conclusion is reached considering the facts in the aggregate. Where there is insufficient factual content to draw a reasonable inference that Defendant is liable for the misconduct alleged, the claims must be dismissed. *Id.*

Ordinarily, the Court would allow a period of time for Plaintiff to file an amended complaint to determine if he could meet the pleading requirements of an action in this court. In this case, however, the Court already provided Plaintiff an opportunity to amend his Complaint to allege facts sufficiently to describe the disclosures upon which Plaintiff's action is based. Plaintiff thereafter filed his Amended Complaint that alleged the matters found in Paragraph 83. The Court now has evaluated the information Plaintiff has alleged to support his action. It would be futile to give Speaker another chance to amend and state a viable claim.

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant the United States Department of Health and Human Services Centers for Disease Control and Prevention's Motion to Dismiss Plaintiff's Amended Complaint

and, In the Alternative, Motion for Partial Summary Judgment [25] is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [5] is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Stay [6] is **DENIED AS MOOT.**