[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-11374
Non-Argument Calendar

_____

D.C. Docket No. 2:11-cv-00013-LGW-JEG

MARIETTA SAMPSON,
OSCAR MANGRAM,
ERNEST FULLER, III,
RASHEED MANGRAM,

                                        Plaintiffs - Appellants,

versus

CITY OF BRUNSWICK,
GLYNN COUNTY, GEORGIA,
SHAUN T. JOHNSON,
R. C. ALEXANDER,
TERRY WRIGHT,
JAMES JORDAN,
MIKE LAWSON, et al,

                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(November 18, 2013)

Before MARCUS, WILSON, and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants Marietta Sampson, Oscar Mangram, Ernest Fuller, III, and Rasheed Mangram appeal from the district court's grant of summary judgment in favor of R.C. Alexander, Terry Wright, James Jordan, and Mike Lawson (collectively, "individual Defendants"), as well as the City of Brunswick and Glynn County, Georgia. The plaintiffs brought this action pursuant to 42 U.S.C. § 1983 for alleged violations of their Fourth, Fifth, Sixth and Fourteenth Amendment rights, and for state law claims of battery and false arrest. Their allegations stem from the execution of a no-knock search warrant -- at the family home of plaintiffs Sampson, her son Oscar Mangram, and Sampson's grandson Rasheed Mangram -- that the police had obtained in search of evidence of violations of the Georgia Controlled Substance Act. On appeal, the plaintiffs argue that the district court erroneously concluded that: (1) the individual Defendants were entitled to qualified immunity for all claims arising from the plaintiffs' detention during the execution of the warrant; and (2) the City of Brunswick and Glynn County, Georgia were not liable for their customs and policies. After careful review, we affirm. [1]

---

[1] The plaintiffs also mention in their brief state law battery claims, but they do not make any legal argument about these claims, and we will not consider them. Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (stating that passing references to issues are insufficient to raise a claim for appeal, and such issues are deemed abandoned).

2

We review the district court's grant of summary judgment de novo. Robinson v. Tyson Foods, Inc. 595 F.3d 1269, 1273 (11th Cir. 2010). Summary judgment is warranted when, viewing the evidence in the light most favorable to the non-movant, the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Fed.R.Civ.P. 56(a).

First, we are unpersuaded by the plaintiffs' argument that the district court erred in granting qualified immunity to the individual Defendants. To establish a § 1983 claim, the plaintiffs must make a prima facie showing that: (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States, and (2) the act or omission was done by a person acting under color of law. Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993). Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. Hope v. Pelzer, 536 U.S. 730, 739 (2002). Qualified immunity allows government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, "protecting from suit all but the plainly incompetent or one

3

who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (quotation omitted).

To be protected by qualified immunity, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Id. (quotation omitted). No one disputes here that the officers were carrying out their discretionary duties as law enforcement officers when they detained the plaintiffs during the execution of a search warrant.

If a government official was acting within the scope of his discretionary authority, "the burden then shifts to the plaintiff to show that the grant of qualified immunity is inappropriate." McCullough v. Antolini, 559 F.3d 1201, 1205 (11th Cir. 2009). To do so, the plaintiff must show: one, that the facts viewed in the light most favorable to the plaintiff establish a constitutional violation by the officers, and, two, that it was clearly established at the time of the incident that the actions of the defendant were unconstitutional. Id. We need not conduct this two-prong analysis in any specific order; rather, we may exercise our sound discretion in deciding which prong to address first. Id. In assessing the clearly-established prong, we ask if it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002). Thus, for a constitutional violation to be clearly established, a plaintiff must show (1) that a materially similar case has already been decided,

4

giving notice to the police; (2) that a broader, clearly established principle should control the novel facts in this situation; or (3) this case fits within the exception of conduct which so obviously violates the constitution that prior case law is unnecessary.  Keating v. City of Miami, 598 F.3d 753, 766 (11th Cir. 2010).

Here, we do not agree with the plaintiffs that any of their constitutional rights were violated, much less that any asserted violation was clearly established at the time of the incident.  As for plaintiffs' claim that their temporary detention during the execution of the search warrant was unlawful, the Supreme Court has established that police officers have a "categorical" right to detain occupants of a premises while executing a search warrant for contraband.  Michigan v. Summers, 452 U.S. 692, 705 (1981).  All three legitimate law enforcement interests identified in Summers were satisfied here: "(1) flight prevention; (2) the minimization of risk to officers; and (3) the facilitation of an orderly search."  Croom v. Balkwill, 645 F.3d 1240, 1247 (11th Cir. 2011).  Further, although the Supreme Court recently limited these kinds of detentions to the "immediate vicinity" of the location being searched, see Bailey v. United States, 133 S. Ct. 1031, 1042 (2013), the record shows that all the plaintiffs were in the immediate vicinity of the premises when the police executed the search warrant.  Accordingly, there is no evidence of a violation of the plaintiffs' constitutional rights at the time of their detention.

As for the plaintiffs' claim that their six-hour detention lasted too long, they have failed to produce any evidence suggesting that the search was not diligently pursued or that six hours was not a reasonable amount of time to complete the search. See Croom, 645 F.3d at 1251 (concluding that -- at the very least -- Summers permits the continued detention of lawfully detained occupants during the length of a routine and diligently pursued warranted search). We are also unconvinced that the force used during the course of the detentions was excessive. Cf. id. at 1252-53 (holding that forcing a sixty-three year old woman with arthritis to the ground and handcuffing her was reasonable); Durruthy v. Pastor, 351 F.3d 1080, 1094 (11th Cir. 2003) (forcibly taking a standing arrestee to the ground and placing him in handcuffs was not unlawful).

It is also worth noting that Sampson has failed to show -- for purposes of her claim concerning the individual Defendants' failure to bring her a blanket, a jacket, or her oxygen tank -- that this kind of constitutional violation, if any, was clearly established at the time of her detention. Indeed, because we have located no materially similar cases on these issues, Sampson must show the individual Defendants' actions would "inevitably lead every reasonable officer in the defendant's position to conclude the force was unlawful." Lee, 284 F.3d at 1198 (quotation omitted). However, Sampson has not pointed to anything in the record indicating what the temperature was, whether there was rain, snow, or wind, what

she was already wearing, nor whether the others wore or needed jackets. Nor has

she shown that she requested the oxygen tank, that she told the officers she was not

feeling well and needed medical attention, or anything that could establish her

obvious need for the tank. Without more, we cannot evaluate whether Sampson's

claims amounted to any clearly established constitutional violations. In short,

because we conclude that the plaintiffs have failed to show any violation of their

constitutional rights (much less that the violation was clearly established), the

district court did not err in granting qualified immunity to the individual

Defendants on all of these claims.

We also find no merit to the plaintiffs' argument that the City of Brunswick

and Glynn County should be liable for their policy of temporarily detaining

individuals located in the street right-of-way between the curb line and the lot line

where a search warrant is being executed. To hold a governmental entity liable

under 42 U.S.C. § 1983 "a plaintiff must show: (1) that his constitutional rights

were violated; (2) that the municipality had a custom or policy that constituted

deliberate indifference to that constitutional right; and (3) that the policy or custom

caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004).

In this case, the City and County cannot be liable because, as we've already

discussed, we've identified no violation of the plaintiffs' constitutional rights by

7

the individual Defendants.  Thus, the district court did not err in granting summary judgment on this claim.

**AFFIRMED.**